USCA1 Opinion

 

 United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 96-1244 UNITED STATES OF AMERICA, Appellee, v. THAKHONE KHOUNSAVANH, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________ ____________________ Before Stahl, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Jennifer Petersen, with whom Karl R.D. Suchecki and Petersen & _________________ ___________________ __________ Suchecki were on brief, for appellant. ________ Sheldon Whitehouse, United States Attorney, with whom Zechariah __________________ _________ Chafee, Assistant United States Attorney, was on brief, for appellee. ______ ____________________ May 16, 1997 ____________________ BOWNES, Senior Circuit Judge. Defendant Thakhone BOWNES, Senior Circuit Judge. _____________________ Khounsavanh appeals his conviction for Conspiracy to Distribute Cocaine Base and for Possession with Intent to Distribute Cocaine Base. See 21 U.S.C. 841(a)(1), 846; 18 ___ U.S.C. 2. He contends that the district court erred in denying his motion to suppress the fruits of a search on the ground that the affidavit underlying the search warrant lacked sufficient information to support a finding of probable cause. We affirm. The Facts The Facts _________ On May 23, 1995, Providence, Rhode Island police officers executed a search warrant for the first floor rear apartment at 676-678 Chalkstone Avenue, a three-family tenement building. The warrant was based on an affidavit submitted by Detective Freddy Rocha. According to the affidavit, a confidential informant had told Detective Rocha that two men were storing and selling crack cocaine in that apartment. The affidavit described the two men as "'Fat Boy' Alias John Doe . . . an Asian Male, Unkn. Age. 5'6" Tall and 170 Lbs. and 'Turtle' Alias John Doe. 5'7" 130 Lbs." The informant also told the detective that he "could make a purchase of cocaine from this subject." (The affidavit alternates several times between referring to the subjects in the singular and in the plural.) -2- 2 The detective sought to corroborate the informant's story by taking him up on his offer to conduct a controlled buy of cocaine from the apartment under the officer's supervision. According to the affidavit, Detective Rocha "drove to the Chalkstone Avenue area [and] searched the informant for contraband. Finding none the informant was given an amount of U.S. currency and directed to make a purchase of cocaine from 'Fat Boy' and 'Turtle' at 676-678 Chalkstone Ave." The detective watched the informant enter the building through the rear door and exit five minutes later through the same door. The detective met the informant at a pre-arranged location, where the informant handed him a quantity of suspected cocaine which he stated he had purchased from "Fat Boy." Tests later revealed that the substance was indeed cocaine. The detective then applied for a warrant to search the first floor rear apartment at 676-678 Chalkstone Avenue and/or the two men ("Fat Boy" and "Turtle"). The complaint for the warrant (which was sworn to before a state court judge) added to the affidavit's description the facts that "Fat Boy" was approximately twenty-five years old with "short hair balding," and that "Turtle" was an Asian male with black short hair. The court issued the warrant, both as to the premises and as to the persons of "Fat Boy" and "Turtle." -3- 3 The police executed the warrant the same day. When the police entered the apartment, two men who approximately fit the informant's descriptions fled to a bedroom. Three other people were present in the apartment during the search but did not leave the room they had been in when the police arrived. One detective searched "Fat Boy" and found in his front pants pocket a plastic bag containing fourteen smaller bags of what tested out as crack cocaine. Another detective found, in the ceiling of the kitchen, a bag containing 650 smaller bags of crack cocaine. Another small bag of powder cocaine was found in the bedroom. In addition to the drugs, the police seized the wallets and identification of the two men who fled, one of whom is the defendant. They also found in the apartment and seized a pager, bagging material, and a gas bill on which the defendant's name appeared. The defendant moved to suppress the fruits of the search. After hearing, the district court denied the motion. The defendant then entered a plea of guilty to Counts I and II of the indictment, and the government dismissed Count III. In his plea agreement, the defendant gave notice that he intended to appeal the denial of his suppression motion, pursuant to Fed. R. Crim. P. 11(a)(2). Standard of Review Standard of Review __________________ In reviewing a denial of a suppression motion, the district court's ultimate legal conclusion, including the -4- 4 determination that a given set of facts constituted probable cause, is a question of law subject to de novo review. See _______ ___ Ornelas v. United States, 116 S. Ct. 1657, 1659 (1996); __________________________ United States v. Zayas-Diaz, 95 F.3d 105, 111 n.6 (1st Cir. ___________________________ 1996). The district court's findings (if any) of historical facts -- "the events which occurred leading up to the . . . search," Ornelas, 116 S. Ct. at 1661 -- must be upheld unless _______ they are clearly erroneous. See id. at 1663; Zayas-Diaz, 95 ___ ___ __________ F.3d at 111 n.6. A reviewing court must "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas, 116 S. Ct. at _______ 1663. But "the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause" is a mixed question of law and fact which we review de novo. Id. at _______ ___ 1661-63. Analysis Analysis ________ The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. There is a strong preference for the use of search warrants. -5- 5 See Ornelas, 116 S. Ct. at 1663; Payton v. New York, 445 U.S. ___ _______ __________________ 573, 586 (1980). While the warrant requirement may be dispensed with in certain exigent circumstances that are "few in number and carefully delineated," United States v. United _______________________ States Dist. Court, 407 U.S. 297, 318 (1972), the probable ___________________ cause requirement is rigorously adhered to. See Arizona v. ___ __________ Hicks, 480 U.S. 321, 326-27, 329 (1987). "Probable cause _____ exists when 'the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it'" or that the search will turn up contraband. United ______ States v. Schaefer, 87 F.3d 562, 565 (1st Cir. 1996) (quoting __________________ United States v. Aguirre, 839 F.2d 854, 857-58 (1st Cir. __________________________ 1988)). The standard we apply in determining the sufficiency of an affidavit is whether the "totality of the circumstances" stated in the affidavit demonstrates probable cause to search either the premises or the person.1 See ___ Illinois v. Gates, 462 U.S. 213, 238 (1983). "[P]robable __________________ cause need not be tantamount to proof beyond a reasonable doubt. . . . Probability is the touchstone." Aguirre, 839 _______ F.2d at 857 (internal quotation marks and citations omitted).  ____________________ 1. "The issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application." Zayas-Diaz, 95 F.3d at 111. __________ -6- 6 See Gates, 462 U.S. at 244 n.13 ("[P]robable cause requires ___ _____ only a probability or substantial chance of criminal activity, not an actual showing of such activity."). To establish probable cause for a premises search, the information available in the affidavit must show "a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. An affidavit ___ supporting a request for a search warrant must give the magistrate a "substantial basis" upon which to conclude that there is such a "fair probability." Gates, 462 U.S. at 238- _____ 39. The facts must be judged against an objective standard: "would the facts available to the officer at the moment of . . . the search 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate?" Terry v. ________ Ohio, 392 U.S. 1, 21-22 (1968). ____ In many cases, as here, part of the basis for probable cause derives from information that the police have obtained from an informant. Prior to Gates, the Court had _____ developed a two-pronged test for such a case: when the warrant affidavit rests on hearsay -- an informant's report - - the affidavit must inform the magistrate "of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were [the basis of knowledge prong], and some of the underlying circumstances from which the officer concluded that the informant . . . was -7- 7 'credible' or his information 'reliable' [the veracity prong]." Aguilar v. Texas, 378 U.S. 108, 114 (1964); __________________ Spinelli v. United States, 393 U.S. 410, 416 (1969). Gates _________________________ _____ abandoned the notion that "these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case" before a probable cause determination may be sustained. Gates, 462 U.S. at 230. _____ Gates replaced the two-pronged framework of Aguilar and _____ _______ Spinelli with the totality of the circumstances test.  ________ While eschewing a rigid adherence to each of the Aguilar-Spinelli factors, Gates maintained the relevancy of ________________ _____ the considerations set forth in those cases. The Gates Court _____ surely did not intend that its totality test would "threaten[] to 'obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law.'" Gates, 462 U.S. at 291 (Brennan, J., dissenting) _____ (quoting Johnson v. United States, 333 U.S. 10, 17 (1948)). _________________________ Nor did Gates intend for trial and appellate courts to _____ abdicate their responsibility to uphold the Fourth Amendment's probable cause requirement. See Hicks, 480 U.S. ___ _____ 321. We have never read Gates as a total abandonment of _____ standards and rules of law in determining whether the state may intrude on a citizen's privacy. Nor does Gates mean that _____ reviewing courts are writing on a clean slate when we -8- 8 confront the question of when an informant's information rises to the level of probable cause. The Gates Court agreed _____ that the Aguilar and Spinelli factors, including "an _______ ________ informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report." Gates, 462 U.S. at 230; see Schaefer, 87 _____ ___ ________ F.3d at 566 (the Aguilar and Spinelli factors are "highly _______ ________ relevant," even after Gates). _____ We have recently offered a non-exhaustive list of possible factors that a magistrate or reviewing court will consider:  Among others, the factors that may contribute to a "probable cause" determination include whether an affidavit supports the probable "'veracity' or 'basis of knowledge' of persons supplying hearsay information"; whether informant statements are self- authenticating; whether some or all the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance); and whether a law- enforcement affiant included a professional assessment of the probable significance of the facts related by the informant, based on experience or expertise. None of these factors is indispensable; thus, stronger evidence on one or more factors may compensate for a weaker or deficient showing on another.  Zayas-Diaz, 95 F.3d at 111 (citations and footnote omitted). __________ The risk that the informant is lying or in error need not be wholly eliminated. Rather, what is needed is that "the probability of a lying or inaccurate informer has -9- 9 been sufficiently reduced by corroborative facts and observations." 2 W. LaFave, Search and Seizure: A Treatise _______________________________ on the Fourth Amendment 168 (3d ed. 1996) ("LaFave") __________________________ (quotation omitted). The judgment to be made is: when does verification of part of the informant's story make it sufficiently likely that the crucial part of the informant's story (i.e., allegations that criminal activity has occurred and that evidence pertaining thereto will be found in the location to be searched) is true, such as would "'warrant a [person] of reasonable caution in the belief' that [a search would be] appropriate," based upon what the informant has said? See Terry, 391 U.S. at 21-22. ___ _____ In analyzing whether there is sufficient corroboration, in verifying the reliability of the informant or in demonstrating an adequate basis for knowledge, it is not particularly probative for the informant to supply a lot of details about irrelevant facts that other people could easily know about and that are not incriminating, such as describing all the furniture in an apartment or the defendant's routine activities. Such details do not demonstrate that the informant has a legitimate basis for knowing about the defendant's allegedly criminal activity which, after all, is what the affidavit must establish. "At best, [such] details merit the conclusion that the informant has been in the premises in question [or knows the -10- 10 defendant's daily routine], but since a direct statement to that effect by the informant would not carry the day, it can hardly be enough that this particular conclusion is reached by inference from the statement of detail." 2 LaFave at 160 (footnote omitted). Unless such details, combined with other circumstances, would in some way generate suspicion that criminal conduct has occurred or that contraband or evidence exists on the premises or on the person to be searched, they would not warrant a prudent police officer in the belief that a search would be appropriate. Cf. Alabama v. White, 496 ___ _________________ U.S. 325, 332 (1990) (where anonymous caller told police a woman would leave a certain apartment building at a particular time and get into a particularly described car and drive to a certain motel, and where surveilling officers observed such behavior, these facts constitute a "close case" to establish merely reasonable suspicion to make a Terry _____ stop). In the instant case, the defendant challenges two distinct aspects of the search: whether the police had probable cause to obtain a warrant to search the apartment; and whether the police were justified in searching the defendant when they did. We will analyze each of these aspects separately. We conclude that the warrant was based upon sufficient facts to establish probable cause to search the premises; then when that search was executed, additional -11- 11 information came to light which provided probable cause to search the person of the defendant. The government argues that a controlled buy, observed by the officer, is per se sufficient to establish _______ probable cause to search the apartment. We disagree. A per ___ se rule is not appropriate in the context of protecting __ precious Fourth Amendment freedoms. Fourth Amendment rights "are not mere second-class rights but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government." Brinegar v. United States, 338 U.S. 160, 180 __________________________ (1949) (Jackson, J., dissenting). "But the right to be secure against searches and seizures is one of the most difficult to protect. Since the officers are themselves the chief invaders, there is no enforcement outside of court. . . . Courts can protect the innocent against such invasions only indirectly and through the medium of excluding evidence obtained against those who frequently are guilty." Id. at ___ 181. As Justice Scalia has written for the Court, "there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." Hicks, 480 U.S. at 329. _____ -12- 12 Moreover, a probable cause determination is fundamentally a fact-specific inquiry. No one factor possesses talismanic powers. Because of the importance of Fourth Amendment freedoms to every American, and because of the fact-specific nature of the probable cause inquiry, we reject the government's contention that a controlled buy should be per se sufficient to establish probable cause.  ______ See United States v. Caggiano, 899 F.2d 99, 102 (1st Cir. ___ __________________________ 1990) (a determination of probable cause "cannot be based on hard certainties and rigid rules"); cf. Richards v. ___ _____________ Wisconsin, 117 S. Ct. 1416, 1421 (1997) (rejecting a per se _________ ______ exception to the knock-and-announce element of Fourth Amendment's reasonableness requirement for felony drug investigations). We hold instead that every case must be evaluated "on its own facts and circumstances," Ker v. _______ California, 374 U.S. 23, 33 (1963) (internal quotation marks __________ omitted), with due consideration to the totality of all the circumstances in that particular case, Gates, 462 U.S. at _____ 238. See also Ornelas, 116 S. Ct. at 1661. "[T]he fact that ________ _______ [a controlled buy] may frequently present circumstances warranting [a finding of probable cause] cannot remove from the neutral scrutiny of [a magistrate and] a reviewing court the [existence of probable cause] in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and -13- 13 circumstances of the particular [affidavit in support of a warrant application] justified" the issuance of the warrant. Richards, 117 S. Ct. at 1421. Accordingly, we hold that ________ magistrates and reviewing courts must carefully review every warrant application on its own merit, to determine whether all the facts and circumstances of that case are sufficient to establish probable cause to conduct a search. We do agree, however, that, taking into account the totality of circumstances in the instant case, the government had established probable cause for the search of the first floor rear apartment at 676-678 Chalkstone Avenue. According to the officer's affidavit, the informant had told him that he knew "Fat Boy" and "Turtle" were storing and selling drugs in the apartment in question; the informant had offered to make a purchase from those individuals in that apartment (knowing that, if he was lying, he would be found out relatively quickly); and the informant in fact went to the apartment without crack cocaine, after having been patted down, and emerged several minutes later with crack, explaining that he had purchased the crack from "Fat Boy."2 While all these facts did not corroborate each other with certainty, the combination of facts "'reduced the chances of a reckless or prevaricating tale,' [and] thus provid[ed] 'a  ____________________ 2. The complaint contained additional facts but those were not part of the affidavit. See infra at 20 & n.4. ___ _____ -14- 14 substantial basis for crediting the hearsay.'" Gates, 468 _____ U.S. at 244-45 (quoting Jones v. United States, 362 U.S. 257, ______________________ 269, 271 (1960)). Taken together, these facts were sufficient to give the magistrate a "substantial basis" upon which to conclude that there was a "fair probability that contraband or evidence of a crime [would] be found" in the apartment. See Gates, 462 U.S. at 238-39.  ___ _____ This case contains almost the exact same fact pattern as in United States v. Garcia, 983 F.2d 1160 (1st ________________________ Cir. 1993). In Garcia, the defendant had moved to suppress ______ evidence seized during the search of an apartment in a three- family building, on the ground that the affidavit underlying the search warrant upon which the search team relied failed to demonstrate probable cause for the search. That affidavit, in essence, stated: that [the affiant, a police detective] had reason to believe that a large-scale drug operation was being conducted out of the second floor apartment of 93-95 Gallatin Street; that he met with a reliable confidential informant who told him that two Hispanic persons were storing and selling drugs; that the informant had seen large amounts of cocaine in the apartment; and that, to corroborate this information, [the detective] executed a "controlled buy" through the informant. The affidavit fully described the "controlled buy."  Id. at 1166. In Garcia, as here, the controlled buy was less ___ ______ than ideal: the detective was able to watch the informant enter and leave the building through its front door, but did -15- 15 not follow the informant into the building and thus was unable to verify with certainty which apartment was the source of the drugs (or even whether the drugs had been secreted elsewhere in the building, as the defendant had hypothesized). Id. at 1166-67. In addition, Garcia shared ___ ______ another anomaly with the instant case: when the informant handed the drugs to the officer, he reported that he had purchased the drugs from "the Hispanic male [singular] who resided in the second floor apartment," even though the informant had previously told him that there were two Hispanic persons involved in the drug-selling operation. Id. ___ at 1167. We found that the state court judge issuing the warrant and the district judge reviewing it "drew a reasonable inference of probable cause that there was drug trafficking in the second floor apartment of 93-95 Gallatin Street." Id. Likewise, in the instant case, the affidavit ___ contained sufficient information to lead a reasonable person to believe that crack cocaine was being stored in and sold from the first floor rear apartment at 676-678 Chalkstone Avenue, also a three-story tenement building. The present case is controlled by Garcia even ______ though the affidavit there contained one fact that the present affidavit did not: the detective in Garcia described ______ the informant as "reliable." This is a distinction without a -16- 16 real difference. A bald assertion of reliability, with no allegations regarding the basis for the officer's belief that the informant is reliable -- such as convictions obtained as a result of information supplied in the past by the informant -- is "entitled to only slight weight." United States v. _________________ Foree, 43 F.3d 1572, 1576 (11th Cir. 1995) (internal _____ quotation marks omitted); see Gates, 462 U.S. at 239 ("An ___ _____ officer's statement that 'affiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate."). Even though the informant's past performance may be considered in evaluating the credibility or reliability of the informant, a mere allegation that the informant is "credible" or "reliable" does not permit the judicial officer to assume that any such past performance actually took place or that the performance was of a nature to merit such a characterization of the informant.  Thus, it is of only "slight" moment that this case lacks the conclusory assertion of reliability that was present in Garcia. The more important facts are the ______ similarities between the two cases: an informant who alleges that drugs are being stored and sold in a particular apartment, who offered to make a controlled buy and who did make a controlled buy from the same apartment. The corroboration of the informant's story did not consist merely -17- 17 of corroborating some innocent facts that any number of people might know. This was corroboration of the very criminal activity which the police were investigating, and of the existence of contraband or evidence on the premises to be searched. As such, it supports a finding of probable cause in a way that facts about furniture or routine activities do not. To be sure, the controlled buy in this case was, as the defendant claims, not free of problems. Compare United _______ ______ States v. Cruz Jimenez, 894 F.2d 1, 3 (1st Cir. 1990) _________________________ (informant, searched first, had cocaine when she exited defendant's motel room; that, plus what police overheard from body recorder she wore during transaction, confirmed that she obtained drugs from defendant). But as noted, in Garcia, 983 ______ F.2d at 1166-67, we upheld a probable cause determination where the facts, including the imperfections of the controlled buy, were remarkably similar to those here.3  ____________________ 3. The government contends that, even if the affidavit did not contain sufficient corroboration to establish probable cause to search, suppression is not appropriate because of the Leon good faith exception. See United States v. Leon, ____ ___ ______________________ 468 U.S. 897 (1984). "This good faith exception, however, is grounded in an objective standard of reasonableness. As a result, an officer is required to have a 'reasonable knowledge of what the law prohibits.'" United States v. _________________ Fuccillo, 808 F.2d 173, 177 (1st Cir.), cert. denied, 482 ________ _____________ U.S. 905 (1987) (quoting Leon, 468 U.S. at 920 n.20). ____ "Suppression is still an appropriate remedy when 'the officers were . . . reckless in preparing their affidavit. . . .'" Fuccillo, 808 F.2d at 178 (quoting Leon, 468 U.S. at ________ ____ 926). In Fuccillo, we held that the officers "were reckless ________ in not including in the affidavit information which was known -18- 18 The defendant further argues that the search warrant was inadequate because of a few minor discrepancies or errors in some facts in the affidavit and in the officer's testimony about the name of the street from which he was conducting surveillance during the controlled buy. We disagree. The magistrate "may reasonably choose to . . . disregard petty inconsistencies" in informants' statements. Schaefer, 87 F.3d at 567 (quoted in Zayas-Diaz, 95 F.3d at ________ __________ 115-16). We turn now to the defendant's claim that the affidavit contained insufficient information to form the basis for probable cause to search the person of this ______ defendant. This is a separate issue from the existence of probable cause to search the premises which we have discussed supra. Probable cause to search a person "must be supported _____ by probable cause particularized with respect to that person." Ybarra v. Illinois, 444 U.S. 85, 91 (1979); United __________________ ______ States v. Sepulveda, 102 F.3d 1313, 1315 (1st Cir. 1996). ____________________ "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give  ____________________ or easily accessible to them." Id. at 178. There, the ___ officers "simply did not 'take every step that could reasonably be expected of them.'" Id. (quoting Massachusetts ___ _____________ v. Sheppard, 468 U.S. 981, 989 (1984)). In this case, it is ___________ an open question whether this objective standard of reasonableness was met. We need not reach this question, however, since we determine the evidence is admissible, in any event, on other grounds. -19- 19 rise to probable cause to search that person." Ybarra, 444 ______ U.S. at 91; Sepulveda, 102 F.3d at 1315. The factors _________ discussed supra, while providing probable cause to believe _____ that the premises contained contraband or evidence of a ________ crime, do not alone provide a sufficient basis for the police to have searched this defendant's person (on which they found his identification which, coupled with the gas bill they had found in the apartment, tied him to the premises).  The government argues that the "specificity and detail" of the informant's descriptions of "Fat Boy" and "Turtle" are so "precise" that they are "self- authenticating," an additional factor that would support issuing a warrant to search the person of this defendant (citing Zayas-Diaz, 95 F.3d at 111). We disagree. It is __________ true that there may be cases where an informant provides such a wealth of detail, with such a high degree of specificity that it is unlikely that the informant is inventing these assertions, and his veracity is supported through the very specificity and detail of his statement. See id.; United ___ ___ ______ States v. Caggiano, 899 F.2d 99, 102-03 (1st Cir. 1990). In __________________ the instant case, however, the so-called "precision" in the affidavit -- "'Turtle' Alias John Doe. 5'7" 130 Lbs." -- is not nearly enough to make the informant's statement self- authenticating. This is true even if we accept the government's invitation to consider as well the additional -20- 20 assertions contained in the complaint attached to the affidavit: that "Turtle" was an Asian male with black short hair.4  Nor does the controlled buy in this case offer a corroborative cure for the affidavit's deficiencies. The controlled buy -- during which the informant said he had bought drugs from "Fat Boy," not from this defendant -- was sufficient to cure the lack of probable cause to search the premises but was inadequate to cure the lack of probable ________ cause to believe that a search of the defendant's person __________________ would likely turn up contraband or evidence of a crime. Nevertheless, once the officers entered the apartment legally pursuant to the legal search warrant for the premises, they observed two men fleeing who (approximately) fit those admittedly sketchy descriptions. This flight, coupled with the controlled buy monitored by the detective and the informant's description (including height and weight) of two alleged drug traffickers selling drugs out ___  ____________________ 4. The latter details were not included in the affidavit itself, and "[t]he issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application." Zayas-Diaz, 95 F.3d __________ at 111. The magistrate may also consider testimony given before him or her, if the testimony was sworn to and made a part of the affidavit. See Fed. R. Crim. P. 41(c). We need ___ not decide whether the complaint accompanying the affidavit in this case should be considered as part of the affidavit, because we hold infra that the police had probable cause to _____ search the defendant's person regardless of how we would decide this issue. -21- 21 of that apartment, was sufficient to establish probable cause to search the defendant's person, without a warrant.5 Thus, even though the affidavit was insufficient to sustain a warrant to search the person of this defendant, the affidavit was sufficient to sustain a warrant to search the apartment, and once the police entered the apartment legally, the defendant's suspicious behavior (coupled with the informant's report and the controlled buy) was sufficient to establish probable cause to search the defendant for contraband or evidence of a crime. Conclusion Conclusion __________ We cannot say that the affidavit here lacked probable cause sufficient to justify a search of the first floor rear apartment at 676-678 Chalkstone Avenue. Nevertheless, we urge police officers to include in their affidavits as much information as they can legally gather on which to base a finding of reliability and basis for the informant's knowledge. And we will require magistrates and reviewing courts to scrutinize affidavits such as this one carefully.   ____________________ 5. The warrantless aspect of the search of the defendant's person was justified by exigent circumstances in this case: two individuals who met an informant's descriptions of drug dealers fled from police officers as they executed a search warrant, during the investigation of a crime involving drugs that could easily be disposed of. See McCabe v. Life-Line ___ ___________________ Ambulance Serv., 77 F.3d 540, 545 (1st Cir. 1996); United _______________ ______ States v. Wihbey, 75 F.3d 761, 766 (1st Cir. 1996). ________________ -22- 22 As we said in the context of Rule 11, "[t]he more meticulously [a legal rule] is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of" a defendant's attacks on asserted violations of the rule. United States v. Martinez-Martinez, 69 F.3d ___________________________________ 1215, 1225-26 (1st Cir. 1995), cert. denied, 116 S. Ct. 1343 ____________ (1996) (quoting United States v. Cotal-Crespo, 47 F.3d 1, 8 ______________________________ (1st Cir.), cert. denied, 116 S. Ct. 94 (1995), in turn ____________ quoting McCarthy v. United States, 394 U.S. 459, 465 (1969)). _________________________ Therefore, "[a]lthough we conclude that the [probable cause determination] in this case was adequate, we are nevertheless compelled to remind district courts [and police and magistrates] that, for the sake of judicial economy and fundamental fairness, the best way to ensure that" the Fourth Amendment's probable cause requirement is complied with is to meticulously comply with it. Martinez-Martinez, 69 F.3d at _________________ 1225-26 (quoting Cotal-Crespo, 47 F.3d at 8); see Richards, ____________ ___ ________ 117 S. Ct. at 1421 (emphasizing importance of neutral scrutiny of police behavior by a  -23- 23 reviewing court to ensure compliance with Fourth Amendment in particular case). Affirmed. Affirmed. ________ -24- 24