USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 96-1657

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 CRAIG STEPHEN SAWYER,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Morton A. Brody, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 Coffin and Cyr, Circuit Judges.
 
 

 Jeffrey Silverstein with whom Perry O'Brian, by Appointment of
the Court, was on brief for appellant.
 F. Mark Terison, Assistant U.S. Attorney, with whom Jay P.
McCloskey, United States Attorney, and James L. McCarthy, were on
brief for appellee.

June 2, 1998

 
 

 COFFIN, Senior Circuit Judge. This is an appeal from a
conviction and sentence entered against defendant Craig Sawyer for
being a felon in possession of a firearm in violation of 18 U.S.C.
 922(g)(1). Sawyer pled guilty to the charge after reserving his
right to appeal the district court's denial of his motion to
suppress several guns taken from his residence. On appeal, he
asserts that the warrant to search his home was not supported by
probable cause and that the good faith exception to the
exclusionary rule cannot properly be applied here. He also
challenges his 33-month prison term, claiming that the district
court erred in treating a prior burglary conviction as a "crime of
violence" for purposes of calculating his sentence. See U.S.S.G.
 2K2.1. We affirm.
 I. Factual Background
 On August 14, 1995, Penobscot County Sheriff's Detective Carl
Andrews responded to a report of a burglary at the home of Woodford
and Julie Sands in Glenburn, Maine. He later described his
investigation in an affidavit supporting his request for a warrant
to search Sawyer's home. According to the affidavit, another
investigator, Deputy Costain, discovered a footprint on the outside
cellar door of the Sands' home. A photograph of the print on the
door accompanied the affidavit. Andrews checked the property and
observed footprints with a similar pattern "clearly etched" in the
sand of the dirt road outside the house. He took up the trail, and
described what he then found as follows:
 [paragraph 4] Your affiant followed these foot prints
 through a wooded pathway to within two hundred yards of
 the Chubbuck residence on the Pushaw Road. Your affiant
 then back tracked these same tracks South of the
 residence to the tarred portion of the road at which time
 each neighboring driveway was checked as the interview of
 the neighbors was done.

 [paragraph 5] Approximately one hundred yards from the
 start of the paved road and approximately one third of a
 mile South of the Sands residence, is the driveway of the
 Craig Sawyer residence. While going to the Sawyer
 residence, your affiant, accompanied by Deputy Costain,
 located the same foot prints that we had followed
 previously. Your affiant was able to see the track to
 within approximately ten yards of the Sawyer residence
 and was able to see it no further.

 The affidavit went on to report that later the same night, "at
an incident in the same area . . . and at the Chubbuck residence,"
some of the items stolen from the Sands' home were recovered. A
number of items remained missing, however, and no one at the
Chubbucks' house had footwear with the tread pattern the officers
had been following. Andrews reported that statements taken from
neighbors, including one mentioned in the affidavit by name,
"indicate that the Chubbucks are associates of Mr. Craig Sawyer." 
Another neighbor reported seeing Sawyer's 16-year-old son "riding
up the road away from the Sands residence around the time of the
burglary."
 After describing this sequence of events, Andrews stated that
he
 believe[d] that based on the defined and obvious tread
 pattern located on the door, on the road, and again in
 the Sawyer driveway, that it is likely that the shoes
 making the print and some of the stolen property [are]
 secreted or located at the Sawyer residence.

The warrant was issued, and the Sawyer home was searched on August
15. Five firearms were seized, but the search yielded no evidence
of the Sands burglary.
 Sawyer was arrested in November 1995 and charged in a one-
count indictment with being a felon in possession of a firearm. 
See 18 U.S.C. 922(g)(1). In denying Sawyer's motion to suppress
the guns, the district court bypassed what it termed the "very
close question" of whether there was probable cause to search and
instead concluded that the weapons were admissible in any event
because of the officer's "good faith" reliance on the warrant. SeeUnited States v. Leon, 468 U.S. 897, 922 (1984). Sawyer then
entered a conditional guilty plea and was sentenced at the bottom
of the applicable guideline range to a 33-month term. This appeal
followed.
 II. The Search Warrant
 Sawyer's argument that the district court erred in denying his
suppression motion targets the court's application of the Leon good
faith exception to the exclusionary rule. He claims that the court
used the wrong standard to evaluate the officer's good faith, and
that the correct standard would not permit a finding that Detective
Andrews reasonably relied on the sufficiency of the warrant. The
government agrees with the district court's resolution of the Leonissue, but it also maintains that the court wrongly viewed the
question of probable cause as "close" and thus needlessly went on
to the good-faith determination.
 Whether "a given set of facts constituted probable cause[] is
a question of law subject to de novo review," United States v.
Khounsavanh, 113 F.3d 279, 282 (1st Cir. 1997), while a district
court's findings with respect to the facts leading to the search
must be upheld unless they are clearly erroneous, id.. A reviewing
court must give "great deference" to a magistrate's assessment of
the facts and inferences supporting the affidavit, however,
"reversing only if there is no "'substantial basis for . . .
conclud[ing]' that probable cause existed." United States v.
Procopio, 88 F.3d 21, 25 (1st Cir. 1996) (citations omitted).
 Our review of the record has led us to agree with the
government that the district court wrongly concluded that the
affidavit probably was inadequate to demonstrate probable cause to
search Sawyer's home. The error, we think, is traceable to a
mistake in the court's reading of the affidavit. In responding to
the government's argument that probable cause to search was
established, the court stated:
 I think it is a very close question whether there is
 probable cause and to come down on the side there is no
 probable cause for issuance of a warrant, the footprint
 testimony never really connects even by solid inference
 the Sawyer premises to whatever the conduct was that
 occurred in the course of a robbery, assuming that that
 is what is indicated, that led to evidence being
 considered by the officer. As I read the affidavit, the
 footprints never led into the driveway of the Sawyer
 place, the only inference that supports that would be the
 inference that might arise from third-party statements 
 that Mr. Sawyer associated with the Chubbucks on
 occasion, and that the Chubbucks had coughed up or been
 discovered with parts of the fruits of the robbery. I
 don't think that is enough. But as I say, it's a very
 close question.

Tr. at 3-4 (emphasis added). The district court's reading of the
affidavit to say that "the footprints never led into the driveway
of the Sawyer place" is directly at odds with the narration in
Andrews' affidavit. In paragraph five, quoted in full above, seesupra at 3, the detective reported that he and Costain encountered
the Sawyer driveway about a third of a mile from the Sands
residence, and "[w]hile going to the Sawyer residence" picked up
the track and was "able to see the track to within approximately
ten yards of the Sawyer residence and was able to see it no
further." Our understanding of Andrews' statement is that the two
law enforcement officers re-discovered the familiar footprint
pattern after they started down the Sawyer driveway. 
 If paragraph five falls short of an express statement that the
tracks led onto the Sawyer property, that fact is confirmed by two
additional, explicit assertions. In the opening paragraph of the
affidavit, Andrews states his expectation of finding in the Sawyer
home a shoe or boot matching the print that was found both on the
Sands' cellar door and "in the driveway of the Sawyer residence." 
In paragraph eight of the affidavit, Andrews stated that the
"defined and obvious tread pattern" was "located on the door, on
the road, and again in the Sawyer driveway."
 Although more detail about the circumstances surrounding the
discovery of the footprints near the Sawyer home would have
strengthened the showing, the affidavit as drafted unequivocally
linked the house with the footprint trail that began on the Sands'
door. That connection, together with a neighbor's report that
Sawyer's 16-year-old son was seen in the area of the burglary at
about when it occurred, the recovery of some of the stolen property
from the Chubbucks' home, the reported association between Sawyer
and the Chubbucks, the "missing" footwear, and the inferences
supported by these facts establish with some room to spare "a fair
probability" that contraband or evidence of the burglary would be
found at the Sawyer home. See Khounsavanh, 113 F.3d at 283
(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The
information contained in the affidavit was obtained directly by the
affiant, it bore no signs of unreliability, and the picture painted
was of a classic follow-the-footprints police investigation. The
fact that more could have been shown does not invalidate the
search; "probable cause requires only a probability or substantial
chance of criminal activity, not an actual showing of such
activity," Gates, 462 U.S. at 244 n.13; see Khounsavanh, 113 F.3d
at 283 ("[p]robability is the touchstone") (quoting United Statesv. Aguirre, 839 F.2d 854, 857 (1st Cir. 1988)). We therefore hold
that the warrant was properly issued.
 Our probable cause determination makes it unnecessary to
address the district court's conclusion that, even if probable
cause did not exist, the firearms were admissible under the good
faith exception to the exclusionary rule. See Leon, 468 U.S. at
922. We therefore do not consider Sawyer's objections to the
district court's approach to the Leon issue.
 III. The Crime of Violence Ruling
 The severity of Sawyer's sentence in this case depends upon
whether his prior felony conviction for burglary constituted a
crime of violence under 2K2.1(a)(4)(A) of the United States
Sentencing Guidelines. If, as the district court found, the
burglary qualifies as such a crime, Sawyer's base offense level for
the current firearms conviction jumps from 14 to 20, increasing his
range of punishment from 15-21 months to 33-41 months. Sawyer
contends that the district court's ruling rested on an incorrect
application of our caselaw. Alternatively, if we endorse the
court's interpretation, he urges us to reconsider our precedent. 
As the question raised is one of law, our review is plenary. SeeUnited States v. Fiore, 983 F.2d 1, 2 (1st Cir. 1992).
 The Maine statute under which Sawyer was convicted provides
that
 [a] person is guilty of burglary if he enters or
 surreptitiously remains in a structure, knowing that he
 is not licensed or privileged to do so, with the intent
 to commit a crime therein.

 Burglary is . . . [a] Class B crime if . . . [t]he
 violation was against a structure that is a dwelling
 place . . . . All other burglary is a Class C crime.

Me. Rev. Stat. Ann. tit 17-A, 401.

 A "crime of violence" is defined in the Guidelines as any
offense punishable by imprisonment for more than one year that:
 (1) has as an element the use, attempted use, or
 threatened use of physical force against the person of
 another, or (2) is burglary of a dwelling, arson, or
 extortion, involves use of explosives, or otherwise
 involves conduct that presents a serious potential risk
 of physical injury to another. 
 
U.S.S.G. 4B1.2(a). It is undisputed that the Maine burglary
statute has no element related to the use of force, and the
burglary was charged as a Class C, non-dwelling crime. The only
way to classify Sawyer's burglary as a crime of violence,
therefore, is to conclude that it "involves conduct that presents
a serious potential risk of physical injury to another."
 In conducting an inquiry into whether a crime fits that
description, we typically use "a formal categorical approach,"
Taylor v. United States, 495 U.S. 575, 600 (1990); Fiore, 983 F.2d
at 3, which means that we look only to the statutory definition of
the offense, not to the particular facts underlying the conviction. 
The government maintains that we already have performed such an
analysis for the crime at issue here, pointing to our holding in
Fiore that a conviction for breaking and entering a commercial
structure, like burglary of a dwelling, satisfies the "crime of
violence" rubric. Sawyer offers two retorts: first, that this
case is distinguishable from Fiore; and, second, that Fiore should
be abandoned as the guidepost for non-dwelling burglaries. 
 Sawyer contends that Fiore does not govern this case because
the Rhode Island burglary statute at issue there is significantly
different from the Maine statute, particularly with respect to the
inherent risk of violence. The statute in Fiore punished the
breaking and entering of various types of structures, at night,
with the intent to commit murder, rape, robbery or larceny. See983 F.2d at 4 n.6. Sawyer emphasizes that the Maine statute does
not require a breaking and entering, which on its own implies
forceful conduct; an unprivileged entry or surreptitious remaining
is enough to constitute unlawful presence. In addition, the
burglar's requisite intent in Maine is to commit any crime, not one
of the four serious felonies listed in the Rhode Island law. 
According to Sawyer, these differences obligate a sentencing judge
to look beyond the statutory language to the charging documents and
other sources to determine whether the particular non-dwelling
burglary posed "a serious potential risk of physical injury to
another." See Taylor, 495 U.S. at 602 (where a single statutory
provision defines several crimes, sentencing court may look to
charging instrument and jury instructions to determine if crime
committed satisfies "crime of violence" elements); United States v.
Winter, 22 F.3d 15, 18 (1st Cir. 1994). 
 Although, in the abstract, reliance on such statutory
distinctions might be reasonable, Sawyer's argument is unavailing
here because it ignores the scope of the precedent. Our decision
in Fiore did not rest on the risk posed by an actual break-in; nor
was it linked to the nature of the crime intended to be committed
in the burglarized building. Rather, after referring to the
Supreme Court's observation in Taylor that "commercial burglaries
often 'pose a far greater risk of harm' than burglaries of dwelling
places," see Fiore, 983 F.2d at 4 (quoting Taylor, 495 U.S. at
594), we generally concluded that "burglary of a commercial
building poses a potential for episodic violence so substantial as
to bring such burglaries within the violent felony/crime of
violence ambit," id..
 That our conclusion was meant to embrace a non-dwelling
burglary even in the absence of the explicit danger factors present
in Fiore is revealed by the context of the language we quoted from
Taylor. The Supreme Court in that case was called upon to
determine the meaning of the word "burglary" as used in the
sentence enhancement provision of the Armed Career Criminal Act
(ACCA), 18 U.S.C. 924(e), which in similar fashion to the
sentencing guideline at issue here, provides harsher penalties for
those with certain types of prior convictions, including a "violent
felony." The term "violent felony" is defined to include
"burglary." In the course of its opinion, the Court rejected the
view that Congress meant "burglary" in the ACCA to cover only a
special subclass of burglaries, such as those meeting the common
law definition, and instead adopted a "generic, contemporary
meaning," 495 U.S. at 598. That definition covers any "unlawful or
unprivileged entry into, or remaining in, a building or structure,
with intent to commit a crime." Id. at 599.
 With that understanding of the word "burglary" as backdrop,
and no limiting language, we believe Fiore must be read to extend
the "otherwise" clause of 4B1.2(a)(2) to any conviction for a
non-dwelling burglary where the statute violated includes the
elements of a "generic" burglary as defined by the Supreme Court in
Taylor. See United States v. Hascall, 76 F.3d 902, 904-906 (8th
Cir. 1996) (relying on Fiore in holding that two commercial
burglaries were crimes of violence under the Guidelines). In
essence, Fiore states that when a generic burglary takes place it
is irrelevant that the structure invaded is not a dwelling; indeed,
the Supreme Court's definition of "generic burglary" explicitly
includes any "building" or "structure." All of the elements of
generic burglary are included in the statute under which Sawyer was
convicted, see supra at 8, and Fiore is thus applicable.
 Anticipating a determination that Fiore governs and is fatal
to his claim, Sawyer alternatively urges that we abandon Fiore and
adopt instead the approach taken by the Tenth Circuit in United
States v. Smith, 10 F.3d 724 (1993) (per curiam). The court there
held that the conspicuous omission of burglary from the list of
specific "crimes of violence" in 4B1.2(a), with the single
exception of burglary of a dwelling, reflected a policy judgment by
the Sentencing Commission that "'mere' unlawful entry of a non-
dwelling for the purpose of stealing property" does not present a
serious potential risk of physical harm to others. Id. at 732-33;
see also United States v. Spell, 44 F.3d 936, 938 (11th Cir. 1995)
(per curiam); United States v. Harrison, 58 F.3d 115, 119 (4th Cir.
1995); United States v. Jackson, 22 F.3d 583, 585 (5th Cir. 1994). 
The panel in Smith advocated a narrow interpretation of the
Guidelines' "otherwise" clause in part because of the inherent
tendency of the career offender provisions to "impose severe
punishments at sudden and arbitrary junctures, in contrast to the
carefully constructed, graduated scheme of sentencing reflected in
the Guidelines." 10 F.3d at 732.
 Whatever the merits of this approach, it is not the one 
this court has followed, and we are not at liberty to revisit the
question without more reason than Sawyer has provided. See United
States v. Clase-Espinal, 115 F.3d 1054, 1056 (1st Cir. 1997)
(citing Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir.
1995), for the proposition that "First Circuit panels generally are
bound by a prior panel decision directly on point").
 We therefore hold that the district court properly classified
the burglary for which Sawyer was convicted as a crime of violence.
 The judgment of the district court is affirmed.