**UNITED STATES of America**

v.

**Curtis Marshall DIXON, Defendant.**

**Criminal Action No. 00–146–1.**

United States District Court,
E.D. Pennsylvania.

Dec. 12, 2000.

Floyd J. Miller, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Benjamin B. Cooper, Federal Defenders' Ass'n, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Curtis Marshall Dixon is charged in a three-count superseding indictment with two counts of possession of cocaine base ("crack") with intent to distribute and possession of a firearm by a convicted felon. Now before the court is the defendant's motion to suppress physical evidence seized during the execution of two search warrants. Upon consideration of the submission of the parties, and after a hearing on December 11, 2000, the court ruled from the bench that the evidence would not be suppressed. The court now writes briefly to supplement that ruling.

### I. Findings of Fact

#### A. Contents of the Probable Cause Affidavits [1]

##### 1. March 11, 1999, Warrant Affidavit

According to Philadelphia Police Officer Brunswick's affidavit supporting the first warrant, he undertook a surveillance of 2135 Spencer Street on March 10, 1999, after received "numerous complaints" regarding the sale of narcotics at that location. Almost as soon he began the surveillance, Officer Brunswick observed a male knock on the door of 2135 Spencer Street, enter the house, and then exit a minute later. Over the course of a half hour, the officer observed two more males engage in the same behavior. The last of these visitors, later identified as John Ricketts, approached the house walking north on the 6000 block of Norwood Street. As Mr. Ricketts left the house and began walking south on the 6000 block of Norwood, Officer Brunswick observed Mr. Ricketts looking at what appeared to the officer to be clear plastic vials. Back up officers notified by Officer Brunswick found Mr. Ricketts smoking what appeared to be cocaine base. At the suppression hearing, testimony established that Mr. Ricketts was apprehended within a several minutes after leaving 2135 Spencer. The officers searched him and confiscated a pipe, a marijuana cigarette, and a plastic vial containing a substance that field-tested positive for cocaine base. The affidavit concluded with the statement that "[y]our affiant has approx. 11 years narc. experience based on the above actions. I request a daytime search warrant

---

1. Unless otherwise noted, the facts set forth in this section are taken from the two warrants' probable cause affidavits.

be approved." The testimony at the suppression hearing was consistent with the information set forth in the affidavit.

Evidence submitted at the suppression hearing also established that Mr. Ricketts testified to the grand jury that he did not buy drugs from 2135 Spencer on March 10, but not whether he told the officers this at the time he was searched. In addition, Officer Brunswick and other police witnesses testified at the hearing that the complaints of drug sales regarding 2135 Spencer Street were all made orally and that there were no written records of these complaints. The court finds this testimony credible.

### 2. April 21, 1999, Warrant Affidavit

Officer Brunswick was also the author of the probable cause affidavit for the April 21, 1999, warrant. In this affidavit, Officer Brunswick stated that there had been complaints regarding the sale of narcotics at 2135 Spencer Street. Testimony at the hearing established that these reports were made orally, there was no record of them, and that the reports were received after the location was searched in March. Officer Henderson arranged for a confidential informant to undertake a controlled buy at that location. On April 21, 1999, at approximately 8:30 a.m., the confidential informant was checked for narcotics, paraphernalia, and money and then given $20.00 in pre-recorded buy money. Officer Brunswick observed the confidential informant enter 2135 Spencer and exit a minute later. The informant returned to the officers with a vial containing an off-white chunky substance, explaining that he or she had obtained the vial in 2135 Spencer Street from a male named Curt in exchange for $20.00. The substance field tested positive for cocaine base. The affidavit also stated that the confidential informant had been used by the officers on two occasions in the past that had lead to arrests on drug charges. The affidavit again concluded with a statement of the officer's eleven years of experience in nar-cotics and his request, based on the above information, that a warrant be issued.

The court finds that the testimony submitted at the suppression hearing supported the information set forth in the probable cause affidavit.

### B. The Execution of the Warrants

Philadelphia police officers executed the warrant issued on March 11, 1999, on the same day. Upon arriving at 2135 Spencer Street, the officers saw Mr. Dixon standing on the front porch. As the officers approached the porch, Mr. Dixon retreated into the house and shut the door. The officers announced that they were police and that they had a search warrant. After receiving no response to their announcement, the officers forced open the door. The officers found Mr. Dixon on the second floor of the house, flushing the toilet while seated fully clothed on it. Also in the house were two other males and two females. The officers seized items including drug paraphernalia, two firearms, money, cocaine and cocaine base.

The April 21, 1999, warrant was also executed on the same day it was issued. Again, the officers knocked on the door and announced that they were police officers and that they had a search warrant. After receiving no response, the officers knocked down Mr. Dixon's door. The officers seized items including drug paraphernalia, money, and cocaine base. The pre-recorded $20.00 used by the confidential informant was found in a pair of jeans hanging over a bedroom door.

Mr. Dixon disputes that the officers knocked on his door and announced their presence before forcibly entering the house on both occasions. Upon consideration of the demeanor of the witnesses at the suppression hearing, as well as the content of their testimony, the court credits the testimony of the arresting officers.

C. Signature of Issuing Authority on March 11, 1999 Warrant

Officer Brunswick testified that he took the application for the March 11, 1999, warrant to a bail commissioner and witnessed the commissioner fill out, sign and affix his seal to the warrant. Although the court only had a poor copy to review, the warrant appears consistent with the officer's testimony in that the portion reserved for the issuing authority is filled out. The court finds that the warrant was issued.

II. Conclusions of Law

Mr. Dixon offers several grounds for attacking the warrants and suppressing the physical evidence seized pursuant to them. He first alleges that neither warrant contained sufficient, reliable information for the issuing authority to make a probable cause determination. He argues that the affidavits contained materially false statements. Mr. Dixon also alleges that the March 11, 1999, warrant lacks the signature of the issuing authority. As noted previously, the court finds that the warrant was signed and properly issued. Finally, he alleges that officers failed to comply with the "knock and announce" rule in executing the warrants.

A. Probable Cause

A magistrate's initial probable cause determine should be paid great deference by the reviewing court. *See Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "A reviewing court must determine only that the magistrate judge had a 'substantial basis' for concluding that probable cause existed to uphold the warrant." *United States v. Whitner,* 219 F.3d 289, 296 (3d Cir.2000) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. 2317). Nevertheless, this deferential standard does not mean that the reviewing court should simply "rubber stamp" the magistrate's conclusions. *United States v. Jones,* 994 F.2d 1051, 1055 (3d Cir.1993) (citation, punctuation omitted).

In determining whether a warrant should be issued, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *New York v. P.J. Video, Inc.,* 475 U.S. 868, 876, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986) (citations, punctuation omitted); *see also Whitner,* 219 F.3d at 296. Probable cause is a "fluid concept" and the inquiry turns on "the assessment of probabilities in particular factual contexts—not readily or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. Certain considerations guide the reviewing court's inquiry:

The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner. Statements in an affidavit may not be read in isolation— the affidavit must be read as a whole. Furthermore, the issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.

*Whitner,* 219 F.3d at 296.

The court considers the content of each affidavit in turn. When read in its entirety, the March 11, 1999, affidavit set forth sufficient information for a magistrate to make a probable cause determination. During the course of his half-hour surveillance, Officer Brunswick observed three males each enter 2135 Spencer Street and leave after only a minute or so in the house. Given that these visits were so brief, a common-sense conclusion is that the location was known to these men, and that they went there for a specific purpose that could be fulfilled quickly. Such behavior is consistent with the sale of narcot-

ics. Moreover, very shortly after leaving 2135 Spencer Street, Mr. Ricketts was holding what appeared to be small plastic vials and was then stopped by officers who found a pipe and drugs on him, making it probable that he procured at least some of these drugs in 2135 Spencer. Consideration of the totality of the circumstances surrounding the surveillance leads to the conclusion that there was a substantial basis for the bail commissioner to issue the warrant on March 11, 1999.

Mr. Dixon also attacks the March 11 affidavit on the grounds that the allegations of complaints of drug sales are unsupported and that Mr. Ricketts stated that he did not purchase drugs from anyone at 2135 Spencer on March 10. While the bald statement that the affiant had received complaints regarding drug sales from unidentified sources would not, standing alone, be a sufficient basis for a warrant, when added to the affiant's observations during the surveillance, the complaints lend further support to the bail commissioner's conclusion that there was probable cause to believe that drugs were present in 2135 Spencer Street. Mr. Dixon's contention that Mr. Ricketts' denial renders the affidavit insufficient is intertwined with his contention that the evidence should be suppressed under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), because the affidavit contains a material omission. This issue is addressed in full in the section discussing *Franks, supra.*

With regard to the April 21, 1999, affidavit, the confidential informant's controlled buy of drugs from 2135 Spencer Street and the report of drug sales provided a basis for the issuing authority to conclude that there was probable cause. *See United States v. Khounsavanh*, 113 F.3d 279, 285–87 (1st Cir.1997) (holding that informant's tip of drug sales at a location and informant's controlled buy of drugs from that location provided a basis for probable cause); *United States v. Butler*, No. 99–536–01, 2000 WL 19541, at *2 (E.D.Pa.

Jan. 13, 2000) (same). Mr. Dixon argues that the affidavit was insufficient because it did not provide a basis for which the magistrate could conclude that the confidential informant was reliable. Admittedly, the affidavit contains only a bare recitation of the informant's past reliability, without any details of the nature of this assistance. The affidavit, however, provides another basis for assessing the confidential informant's reliability. *See United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993) (noting the importance of an informant's past reliability where information was uncorroborated; also noting that informant's past behavior is not the only means to establish his or her reliability). The affidavit states that the officers checked the confidential informant for drugs, paraphernalia, and money before the informant entered the house. Upon returning from the house only a minute later, the confidential informant possessed a clear plastic vial containing a substance that field-tested positive for cocaine base. The informant's entry and exit from the house was observed by officers. Thus, the confidential informant's statement that he or she bought drugs in the house was corroborated by independent evidence, the cocaine base that he or she procured while in the house. Considering the totality of the circumstance presented to the issuing authority—including the report from an unidentified source or sources that drugs were being sold at 2135 Spencer, and the controlled buy—there was a substantial basis for a finding of probable cause for the April 21, 1999, warrant.

## B. *Franks* Issues

Mr. Dixon also argues that Officer Brunswick's affidavits were made with a reckless disregard for the truth. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that

where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or

with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56, 98 S.Ct. 2674. If a *Franks* hearing is held and the defendant demonstrates by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful, "the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause." *See United States v. Brown,* 3 F.3d 673, 676 (3d Cir.1993); *see also United States v. Frost,* 999 F.2d 737, 742–43 (3d Cir.1993); *id.* at 743 n. 2 (noting that the *Franks* test has been applied to omissions as well as misstatements).

Mr. Dixon alleges that Officer Brunswick's statements in both affidavits that there had been complaints of drug sales at 2135 Spencer Street were false and that the officer was reckless in stating that the confidential informant made a controlled buy from 2135 Spencer in support of the second warrant. As noted, Mr. Dixon also appears to allege that the evidence seized pursuant to the first warrant should be suppressed under *Franks,* because Mr. Ricketts stated that he did not buy drugs from 2135 Spencer on March 10, 1999. The source for this contention is Mr. Ricketts' testimony before the grand jury.

■ The government argues that Mr. Dixon has not even made a preliminary showing in support of his first two contentions to warrant a *Franks* hearing, and the court agrees. The Supreme Court cautioned that, in order to mandate an evidentiary hearing on the validity of the affidavit, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.,* 438 U.S. at 171, 98 S.Ct. 2674. Rather,

[t]here must be allegations of deliberate falsehood or of reckless disregard for

the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Id.*

Prior to the suppression hearing, Mr. Dixon presented no evidence suggesting that Officer Brunswick did not, in fact, receive reports of drug sales. Nor did he produce evidence to suggest that the controlled buy did not take place as detailed in the April 21, 1999, warrant affidavit.

■ Nevertheless, the court allowed testimony on this matter during Mr. Dixon's motion to suppress. Upon consideration of this evidence, the court concludes that, in the alternative, Mr. Dixon has not demonstrated by a preponderance of the evidence that Officer Brunswick made materially false statements in either affidavit regarding complaints of drug sales or the controlled buy.

There is no credible evidence that on March 10, 1999, Mr. Ricketts told the arresting officers that he had not purchased the drugs at issue at 2135 Spencer. Mr. Ricketts grand jury testimony was only that he did not purchase the drugs from that location, not that he told the officers this when he arrested. Thus, there is no credible evidence that Officer Brunswick omitted that fact from the affidavit, since that information was not known to the officer at the time he prepared his statement.

Even assuming that the complaints of drug sales were false and that Officer Brunswick acted recklessly in omitting Mr. Ricketts' denial from his March 11, 1999 affidavit, the court finds, in the alternative, that both affidavits contained sufficient other information. "Where an omission

... is the basis for the challenge to an affidavit, a court should ask whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir.1993). With regard to the March search warrant, the affidavit sets forth other facts that would support discounting Mr. Ricketts' statement, had it been included: Mr. Rickett's extremely brief visit to 2135 Spencer was consistent with the behavior of the two other males observed during the surveillance; Officer Brunswick saw Mr. Ricketts looking at what appeared to be clear plastic vials upon leaving the house; and Mr. Ricketts was discovered smoking cocaine base in close proximity to 2135 Spencer. Thus, even if Mr. Ricketts' statement that he did not buy drugs from 2135 Spencer had been included and the allegation of complaints of drug sales was stricken, considered as a whole, the other facts set forth in the March affidavit still would have provided the bail commissioner with a substantial basis for concluding that there was probable cause to issue the first warrant. Similarly, even if the report of drug sales was omitted from the April affidavit, the controlled buy set forth therein would provide a sufficient basis for the second search warrant.

## C. Execution of the Warrants

The "knock and announce rule" is rooted in the Fourth Amendment's protection against unreasonable search and seizures. *See Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The rule requires police first to knock on the door and announce their purpose and identity before attempting a forcible entry of a dwelling. *See Kornegay v. Cottingham*, 120 F.3d 392, 396 (3d Cir. 1997). It is not to be rigidly applied, however, and "it is the duty of a court ... to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). A no-knock entry is justified when the police have a reasonable suspicion that knocking and announcing would be futile or dangerous or that it would inhibit the effective investigation of the crime. *See id.* Thus,

> [c]ourts have upheld dispensing with the knock-and-announce requirement in four situations: (1) the individual inside was aware of the officers' identity and thus announcement would have been a useless gesture; (2) announcement might lead to the sought individual's escape; (3) announcement might place the officers in physical peril; and (4) announcement might lead to the destruction of evidence.

*Kornegay*, 120 F.3d at 397.

Here, the court finds that the credible testimony of the officers is that they did knock and announce their presence when executing both warrants. Thus, the evidence will not be suppressed on this basis.

## III. Conclusion

The court finds that there is no basis upon which to suppress the physical evidence seized from 2135 Spencer Street on March 11, 1999, and April 21, 1999.

An appropriate Order follows.

### ORDER

**AND NOW**, this 12th day of December, 2000, upon consideration of the defendant's Motion for to Suppress Physical Evidence, the response thereto, and after a hearing, it is hereby **ORDERED** that the motion is **DENIED**.