# United States Court of Appeals
## For the First Circuit

No. 20-1072

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS A. RODRÍGUEZ-CRUZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

José B. Vélez Goveo and Vélez & Vélez Law Office on brief for
appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-
Almonte, Assistant United States Attorney, Chief, Appellate
Division, and Julia M. Meconiates, Assistant United States
Attorney, on brief for appellee.

May 12, 2021

**SELYA**, **Circuit Judge**. This sentencing appeal is built on a porous foundation. In his main line of attack, defendant-appellant Carlos A. Rodríguez-Cruz assails the district court for imposing a sentence based on an incorrect statement of a salient fact concerning the defendant's criminal history. The defendant, though, glides over the district court's later correction of its misstatement — a correction that the court made before imposing the sentence. Concluding that the sentence was not in any way premised on a misapprehension of fact but, rather, reflected a plausible sentencing rationale and achieved a defensible result, we summarily affirm.

We briefly rehearse the facts and travel of the case. When — as in this case — a criminal defendant appeals the sentence imposed following a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

In June of 2012, the defendant was involved in an altercation at a pub in Salinas, Puerto Rico, during which he drew a pistol and pointed it at a police officer. After a brief chase, the defendant was apprehended. He was subsequently convicted in the federal district court of possessing cocaine with the intent

to distribute it.  See 21 U.S.C. § 841(a)(1).  The court sentenced him to serve an incarcerative term of forty-eight months.

The defendant served his prison sentence and, in February of 2016, began serving a term of supervised release.  Just over six months later, United States Marshals and federal probation officers — having received information that the defendant was up to his old tricks and again dealing drugs — conducted a search-and-seizure operation at the defendant's residence in Guayama.  For aught that appears, the search turned up no drugs, but a handgun was found in a trash can in the defendant's bedroom.  The gun was loaded with fourteen rounds of ammunition (including one in the chamber).  As a result, the defendant was arrested.

A federal grand jury sitting in the District of Puerto Rico charged the defendant with a single count of possessing a firearm as a convicted felon.  See 18 U.S.C. §§ 922(g)(1), 924(a)(2).  After initially maintaining his innocence, the defendant reversed his field and entered a straight guilty plea on August 26, 2019.  The probation department prepared a PSI Report, which recommended a guideline sentencing range (GSR) of thirty to thirty-seven months.  Neither the government nor the defendant disputed this range.

At the disposition hearing, the district court adopted the recommended GSR.  In preliminary remarks, the court noted that the defendant previously had been sentenced for "a firearms

incident involving a police officer"; that he had eventually been placed on supervised release as a result of that conviction; and that, while on supervised release, a search of his home led to his present predicament. The court proceeded to review the sentencing factors limned in 18 U.S.C. § 3553(a) and emphasized that, given the facts and circumstances of the case at hand, a need to deter and promote respect for the law was at the forefront of the court's thinking. Along with these factors, the court said that it would give special weight to the facts of the offense, the defendant's characteristics, and the possibility of rehabilitation.

At the end of its initial assessment, the court concluded that this was "one of the[] cases" in which the defendant "was showing no respect for the law." Buttressing this conclusion, the court stated that it could not "ignore" the fact that, while in custody, the defendant had "over 30 disciplinary sanctions ranging from A to Z of all sorts."[1] The court said that it had "never seen such a wide array" of disciplinary infractions. That record, in the court's view, demonstrated that the defendant was "a person who doesn't show respect for the law."

---

[1] The defendant's thirty-three disciplinary infractions — fifteen of which were in connection with his confinement for the prior offense and eighteen of which were in connection with his pretrial confinement for the offense of conviction — ranged from possessing dangerous weapons to setting a fire.

- 4 -

The court then asked to hear from the parties. The government advocated for an upwardly variant sentence of fifty-one months' imprisonment. In support, it stressed that the defendant committed the offense of conviction while on supervised release and that he was found with a gun within one year of being discharged from prison. It also described the defendant's splotchy disciplinary history while in custody, prompting the court to remark that it appeared as if the defendant had "exhausted the [federal Bureau of Prisons'] administrative offense list." Defense counsel sought to change the subject, emphasizing that the defendant already had been confined for twenty-one months in pretrial detention. Since the low end of the GSR was thirty months and good-time credits would shrink that number even further, counsel suggested that the court impose a sentence of time served. Counsel added that the defendant's record of disciplinary infractions was largely attributable to "significant issues concerning substance abuse and mental health" and suggested that keeping the defendant in federal custody would not provide the treatment needed for those issues.

The district court told the parties that it did not "have an automatic formula for sentencing weapons offenses." The court then observed that "this [was] not a first time weapon offense, it [was] the second weapons offense back to back." Defense counsel immediately interjected, stating that the defendant's prior

offense was not a weapons offense but, rather, a drug-trafficking offense. The court responded that the arrest leading to the drug-trafficking charge "arose out of a firearms incident." Reading from a section of the PSI Report to which the defendant had not objected, the court clarified that the previous conviction was a drug-related offense but resulted from a dispute in which the defendant pointed a gun at a police officer.

Striving to ensure that everyone was on the same page, the court spelled out its understanding that the defendant "did not plead to a firearms offense before a federal court but he does have that drug offense, and there's no dispute that a firearm was involved." The court then returned to the fact that the defendant was in the midst of a term of supervised release when he committed the offense of conviction and commented that "a sentenced supervisee does not get to choose when to turn the supervised release on and off." It summed up that "the facts do not paint pretty in this case."

When all was said and done, the district court determined that the case warranted an upward variance and that a forty-eight-month sentence was sufficient but not greater than necessary. Although it was "contemplating a higher variance," the court was dissuaded from that course by the persuasive force of defense counsel's mitigating arguments. When the court imposed the forty-

eight-month sentence, the defendant objected to it as substantively unreasonable. This timely appeal followed.

"Appellate review of a criminal defendant's claims of sentencing error involves a two-step pavane." United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). We first review any claims of procedural error and, if we find the challenged sentence to be procedurally sound, we then review any challenge to its substantive reasonableness. See id. In this instance, the defendant frames his claim of sentencing error solely as a challenge to the substantive reasonableness of the imposed sentence.

The defendant's principal claim of error posits that the upwardly variant sentence was substantively unreasonable because the sentencing court predicated the variance on a "specific set of erroneous facts." Putting flesh on these bones, the defendant contends that his variant sentence was "entirely tied to the court's mistaken determination" that he had been convicted of a prior firearms offense. And to make a bad situation worse, the defendant says, the court did not address his need for substance abuse and mental health treatment.

Challenges to the substantive reasonableness of criminal sentences engender abuse-of-discretion review. See Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020); United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020). We

- 7 -

approach such challenges mindful that "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011). Our task, then, is "to determine whether the [challenged] sentence falls within this broad universe." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020).

Our case law makes pellucid that the hallmarks of a substantively reasonable sentence are a plausible sentencing rationale and a defensible result. See, e.g., Bruno-Campos, 978 F.3d at 809; United States v. Cameron, 835 F.3d 46, 52 (1st Cir. 2016); Clogston, 662 F.3d at 593. Where, as here, a variant sentence is imposed, the district court must provide an adequate explanation for the variance. See Bruno-Campos, 978 F.3d at 809. That prerequisite, though, "does not require the court to be precise to the point of pedantry." United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014). It is against this backdrop that we turn to the defendant's asseverational array.

As we have said, the defendant's most loudly bruited claim is that the district court relied on erroneous information in fashioning the sentence. To support this claim, the defendant points to the court's admittedly incorrect statement that the offense of conviction was the defendant's second conviction for a weapons offense. The defendant, however, cherry-picks the sentencing transcript and conveniently overlooks what transpired

after the court made the incorrect statement: the court corrected its error and left no doubt that it understood the circumstances of the earlier offense.

We have explained before — and today reaffirm — that a district court "must take pains to base sentencing judgments upon reliable and accurate information." United States v. Tavano, 12 F.3d 301, 305 (1st Cir. 1993). In measuring adherence to this standard, though, "[a] sentencing court's comments must be read as a whole." United States v. Santa-Soler, 985 F.3d 93, 98 (1st Cir. 2021). A party cannot lift a single comment from the sentencing dialogue and focus on it in splendid isolation. Here, the sentencing transcript, read in its entirety, defenestrates the defendant's claim of error.

The district court's brief mischaracterization of the defendant's prior offense was promptly corrected. In this respect, the record is luminously clear. When defense counsel called the misstatement to the court's attention, the court conceded, "You are correct . . . the [prior] conviction is for controlled substances." The court went on to explain that a firearm was nevertheless seen in the defendant's possession (indeed, it was the pistol that brought the defendant to the officer's attention).

The short of it, then, is that, prior to pronouncing sentence, the court both acknowledged and corrected its earlier misstatement. When the sentencing transcript is read as a whole,

there is nothing to impugn either the reliability or the accuracy of the information upon which the court actually relied in imposing the challenged sentence.

Here, moreover, the court lucidly articulated its sentencing rationale, emphasizing that the defendant disregarded the terms of his supervised release. The court reasonably concluded that the facts of the case demonstrated that the defendant was "a person who doesn't show respect for the law." Given this supportable conclusion, it is difficult to fault the court's determination that an upwardly variant sentence would both serve to deter future misconduct and promote respect for the law. See, e.g., Santa-Soler, 985 F.3d at 98-99; United States v. Díaz-Lugo, 963 F.3d 145, 157-58 (1st Cir. 2020). On this record, the district court's sentencing rationale was plausible.

This brings us to the question of whether the forty-eight-month sentence represents a defensible result. The mere fact that the sentence constitutes an eleven-month ratchet over the top of the GSR, by itself, does not render the sentence substantively unreasonable. See United States v. Flores-Machicote, 706 F.3d 16, 25 (1st Cir. 2013). Rather, the inquiry is fact-sensitive and case-specific. See United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008).

The facts of this case lend considerable support to the extent of the upward variance. The defendant, a convicted felon,

possessed a firearm while still on supervised release. What is more, the offense of conviction occurred within a year of the defendant's release from prison. Even without the long list of disciplinary infractions that took place while the defendant was in custody both before and after his commission of the offense of conviction — which the district court said it was "not using [] to enhance [the defendant's] punishment" — this case is easily distinguished from the mine-run of offenses carrying the same GSR. See Bruno-Campos, 978 F.3d at 806-07; Del Valle-Rodríguez, 761 F.3d at 176-77. Taking these circumstances into account, we conclude that the resultant sentence, though upwardly variant, was well within the realm of permissible results.

Nor is this conclusion undermined by the defendant's unsupported assertion that the district court did not address certain mitigating factors (such as his need for substance abuse and mental health treatment). Although a sentencing court is duty-bound to consider the section 3553(a) factors, it need not descant upon each and every such factor. See Santa-Soler, 985 F.3d at 98; see also United States v. Butler-Acevedo, 656 F.3d 97, 100-01 (1st Cir. 2011) (concluding that certain mitigating factors were considered even though not referenced in court's stated rationale).

Here, moreover, even though the district court did not address the defendant's need for substance abuse and mental health

treatment in haec verba before pronouncing sentence, it explicitly stated that it had considered defense counsel's arguments in mitigation. Indeed, the court indicated that it had imposed a lighter sentence in consequence of those arguments. And to cinch the matter, the court — after pronouncing the forty-eight-month sentence — recommended both substance abuse and mental health treatment during the defendant's incarcerative term. These recommendations show, with conspicuous clarity, the court's awareness of the defendant's continuing need for treatment.

We need go no further.[2] For the reasons elucidated above, the challenged sentence is summarily

**Affirmed**. <u>See</u> 1st Cir. R. 27.0(c).

---

[2] For the sake of completeness, we note that some of the defendant's objections to the sentence might be characterized as procedural. <u>See</u> <u>Del Valle-Rodríguez</u>, 761 F.3d at 176 (explaining that "[t]he procedural dimension [of sentencing challenges] includes errors such as failing to consider appropriate sentencing factors, predicating a sentence on clearly erroneous facts, or neglecting to explain the rationale for a variant sentence adequately"). But because it is the defendant's burden to frame and develop his arguments, we have addressed his claims of sentencing error on their own terms. It is, however, plain that even if we recharacterized the claims as procedural instead of substantive, they would fail.