# United States Court of Appeals
## For the First Circuit

No. 22-1057

UNITED STATES OF AMERICA,

Appellee,

v.

ELVINS SYLVESTRE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Kayatta, Lynch, and Thompson,
Circuit Judges.

William J. O'Neil for appellant.
Karen L. Eisenstadt, Assistant United States Attorney, with
whom Rachael S. Rollins, United States Attorney, was on brief, for
appellee.

August 15, 2023

**KAYATTA**, <u>Circuit Judge</u>. Elvins Sylvestre was convicted after a jury trial of various firearm and controlled substance offenses. He challenges the district court's denial of a motion to suppress evidence gathered pursuant to a search warrant, the denial of a motion for judgment of acquittal on gun possession charges, and the reasonableness of his ultimate sentence. We conclude that none of his challenges have merit. Our reasoning follows.

**I.**

**A.**

In 2019, Pittsfield officers received reports of drug sales by Sylvestre out of 140 Wahconah Street, a location at which police had encountered Sylvestre in responding to property damage and animal control complaints. Some of this information came from a confidential informant ("CI"). CI reported buying cocaine from Sylvestre, describing in detail both Sylvestre and his methods of selling drugs out of 140 Wahconah Street. The police then arranged for seven controlled buys of crack cocaine by CI. We elaborate below on the events of these controlled buys where pertinent to our analysis, but in general, CI was given cash and then returned with drugs that CI said were obtained from Sylvestre or his associates.

Based on CI's information and the controlled buys, as described in greater detail in a supporting affidavit, Pittsfield

police obtained a warrant to search 140 Wahconah Street and its occupants for drugs, paraphernalia, cash, firearms, and records. When police executed the warrant, Sylvestre opened the door initially and then attempted to close it; however, the officers were able to gain entry. One officer grabbed Sylvestre's clothes and held on as Sylvestre attempted to move further into the building. Sylvestre was eventually knocked to the ground a few feet away from a cabinet drawer in which a gun, together with prescriptions bearing only Sylvestre's name, were later discovered. Police found three other individuals in the building. Police also found the following items in different locations on the first floor of the building: ammunition, a cable bill for 140 Wahconah Street bearing Sylvestre's name, cocaine, heroin, drug packaging materials, and a document bearing the name of one of the other individuals found at the address.

**B.**

A grand jury returned an indictment charging Sylvestre with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (count 1); possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (counts 2 and 3); and possession of a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A) (count 4). Sylvestre moved to suppress the evidence seized at 140 Wahconah Street,

claiming that the warrant authorizing the search of the building was not supported by probable cause. The district court denied his motion, finding it "very clear" that the warrant was supported by probable cause because CI's information was deemed to be reliable, and the officers had conducted multiple controlled buys involving Sylvestre and 140 Wahconah Street. Sylvestre's case then proceeded to trial.

At the close of the government's case, Sylvestre moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal on the gun charges. Sylvestre argued that the government had not introduced sufficient evidence to show that he constructively possessed the gun found at 140 Wahconah Street. The district court rejected this argument and denied the motion. It noted that the gun was found in a drawer along with prescription bottles with Sylvestre's name on them, that officers had also found a cable bill with Sylvestre's name listed on it for 140 Wahconah Street, and that officers had previously observed Sylvestre going into and out of 140 Wahconah Street.

Sylvestre was subsequently found guilty on both gun charges, the charge of possessing heroin with intent to distribute, and the lesser-included offense of simple possession of cocaine.

At sentencing, Sylvestre successfully challenged both the application of an enhancement and the initial calculation of his criminal history category under the United States Sentencing

- 4 -

Guidelines. After his objections were sustained, the Guidelines sentencing range was calculated to be 33 to 41 months on counts 1-3 (the felon in possession count and the two drug counts, which were grouped for the purposes of sentencing), as well as a 60-month mandatory minimum on count 4 (possession of a firearm in furtherance of a drug trafficking crime). Sylvestre argued for a sentence of one day on the grouped counts, to be followed by the 60-month mandatory minimum. The one-day recommendation was based on Sylvestre's mental health struggles, as well as his desire to care for his ill grandmother.[1] The government argued for a 96-month sentence on the grouped counts, to be followed by the 60-month mandatory minimum, based on Sylvestre's extensive criminal history and limited time out of custody before being charged with additional crimes.

The district court varied upward and sentenced Sylvestre to 72 months on count 1, the felon in possession count.[2] In so doing, it focused on Sylvestre's criminal history. The court found that the Guidelines sentencing range did not adequately account for Sylvestre's long history of recidivism, including multiple

---

[1] Sylvestre's grandmother, who raised him and adopted him, is at various times referred to in the sentencing transcript as his mother or his grandmother.

[2] The district court also sentenced Sylvestre to 24 and 12 months on the grouped drug trafficking and possession counts respectively, to run concurrently with the 72-month sentence.

firearms offenses, which indicated higher danger to the community. The district court also noted that Sylvestre had previously been convicted of a felon-in-possession offense -- the exact same offense of which he had been convicted in this case -- and that he had received a 57-month sentence for that offense. The district court stated that it sympathized with Sylvestre's mental health struggles and the difficulty of being apart from an ill and aging family member. But it concluded that, ultimately, it had to consider punishment and the safety of the community in addition to rehabilitation.

Sylvestre appeals the denials of both the motion to suppress and the motion for judgment of acquittal. He also challenges the substantive reasonableness of his sentence.[3]

## II.

## A.

We begin with Sylvestre's challenge to the denial of his motion to suppress. We review the district court's legal conclusions de novo, and its factual findings for clear error. United States v. Burdulis, 753 F.3d 255, 259 (1st Cir. 2014). Sylvestre does not appear to challenge as clearly erroneous any of

_____

[3] Sylvestre initially sought to lodge a procedural challenge to his sentence as well, but conceded at oral argument (1) that review of such a challenge would be only for plain error, and (2) that there was no plain error in the district court's explanation of its sentence.

the district court's factual findings. Instead, he argues that the court's legal conclusion -- that the affidavit authorizing the search of 140 Wahconcah Street was supported by probable cause -- was incorrect.

Probable cause to search exists when police demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). In assessing whether a search warrant affidavit establishes probable cause, the court "consider[s] . . . the 'totality of the circumstances' stated in the affidavit." United States v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir. 2011) (quoting United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002)). We must "review the affidavit to make 'a practical, common-sense' determination," according deference to reasonable inferences that the issuing judge may have drawn. Id. (quoting Gates, 462 U.S. at 238). "Further, in a 'doubtful or marginal case,' we defer to the issuing judge's probable cause determination." Id. (quoting Barnard, 299 F.3d at 93).

Where an affidavit is based on statements made by an informant, a reviewing court applies a "'nonexhaustive list of factors' to examine the affidavit's probable cause showing." United States v. Leonard, 17 F.4th 218, 225 (1st Cir. 2021) (quoting Tiem Trinh, 665 F.3d at 10). These include the

- 7 -

informant's "basis of knowledge," whether the informant's statements are "self-authenticating," whether some or all of the statements were corroborated by the police, and whether the affidavit includes a "professional assessment of the probable significance of the facts related by the informant." Khounsavanh, 113 F.3d at 284 (quoting United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996)). "None of these factors is indispensable; thus, stronger evidence on one or more factors may compensate for a weaker or deficient showing on another." Zayas-Diaz, 95 F.3d at 111.

Sylvestre asserts that many of these factors fail to establish CI's veracity and reliability, and thus cut against finding probable cause. He argues that the police did not corroborate several of CI's statements. For example, he asserts that although the affidavit says that CI called Sylvestre to arrange several of the purchases, the police did not check whether the telephone number that CI used was registered to or controlled by Sylvestre, nor did they confirm that CI actually spoke with Sylvestre on those calls. He also notes that the affidavit did not assess the veracity of CI's information about Sylvestre, his methods of selling drugs, and his customers. Ultimately, he asserts that CI was unreliable, and thus the police could not have based their probable cause determination on CI's statements.

We disagree. First, CI's admissions against penal interest supported CI's credibility. See Leonard, 17 F. 4th at 225. Moreover, the officers' own knowledge corroborated CI's claim that Sylvestre was operating out of 140 Wahconah Street. Some of the same officers who investigated him had seen him there before the investigation began. Pittsfield police had also previously received a complaint of drug activity at 140 Wahconah Street before officers began working with CI. The applicant for the search warrant and leader of the investigation had himself seen Sylvestre coming and going from 140 Wahconah Street four to five times before and during the investigation. And the controlled buys provided more than enough corroboration to render CI's statements sufficient to establish probable cause.

Sylvestre's argument to the contrary rests on pointing out that each controlled buy was not as closely controlled as it might have been. He points out that the warrant affidavit's descriptions of the buys do not specify that CI was observed by officers at all times between the completion of the transaction and the return to the officers' location. Sylvestre also points out that some of the buys took place at "undisclosed locations," and that for buys six and seven, the affidavit does not state that officers gave CI a prerecorded amount of currency. All of this, Sylvestre claims, renders the buys "not totally controlled" and thus unreliable. Sylvestre therefore contends there was no

reliable information from which the magistrate who issued the warrant and the district judge could draw "a reasonable inference of probable cause that there was drug trafficking." United States v. Garcia, 983 F.2d 1160, 1167 (1st Cir. 1993).

Even taking Sylvestre's criticisms into account, the totality of the circumstances supports the reliability of CI's information. We have not required that officers observe a controlled buy in its entirety in order for the buy to support a probable cause determination. In Garcia, we found that a controlled buy supported probable cause even though it took place in a building and the officer did not see exactly what happened inside the building. See 983 F.2d at 1167. We emphasized that although it was "possible" that the informant had previously stashed the cocaine in the building, that scenario was "not probable and strain[ed] credulity on a common-sense reading"; it was more probable that the informant had engaged in a transaction, and thus that there was drug trafficking in the apartment within the building that the informant had identified. Id. Likewise, in Khounsavanh, we upheld a probable cause determination based in part on a "less than ideal" controlled buy, where the detective "was able to watch the informant enter and leave the building . . . but did not follow the informant into the building and thus was unable to verify with certainty which apartment was the source of the drugs." 113 F.3d at 286. We also found a controlled buy to

support probable cause where an informant traveled away from the target address unobserved after the buy before meeting police; although the situation was again "less than ideal," the information received from the controlled buy was consistent with other information the police had already received. Leonard, 17 F.4th at 227 (quoting Khounsavanh, 113 F.3d at 286).

Here, even though each controlled buy was itself similarly "less than ideal," Khounsavanh, 113 F.3d at 286, collectively they reasonably corroborated CI's statements that Sylvestre was dealing drugs out of 140 Wahconah Street. During buys two and five, officers observed Sylvestre himself meeting with CI.[4] During buy two, officers saw Sylvestre leave 140 Wahconah Street and observed him meeting with CI at a prearranged location, after which CI gave the officers crack cocaine that CI claimed to have purchased from Sylvestre. And during buy five, officers observed Sylvestre operating a car and saw CI approach the car, after which CI gave the officers crack cocaine that CI claimed to have purchased from Sylvestre. The reasonable inference is that CI obtained the crack cocaine from Sylvestre, at least on one of these occasions, and the court was

---

[4] Sylvestre complains that the affidavit does not explain how officers identified Sylvestre, but as the affidavit itself includes a photograph of Sylvestre and indicates that some of the officers had previously interacted with him, a common-sense reading indicates that they knew what he looked like.

not required to draw a different conclusion because CI was unobserved for some amount of time under varying circumstances between the purchases and the handoffs of crack cocaine to the officers.[5] See Garcia, 983 F.2d at 1167. These buys were also corroborated by information the officers had previously received linking Sylvestre to 140 Wahconah Street.

Four other controlled buys also involved 140 Wahconah Street directly. During buy three, the officers observed an individual leaving 140 Wahconah Street and traveling to the prearranged location. And during buys four, six, and seven, CI was observed entering 140 Wahconah Street, and then gave officers crack cocaine after exiting the building. Although the officers could not see CI in the building (and perhaps for some time afterwards), this gap in observation does not by itself defeat the reasonable inference that CI purchased the crack cocaine inside 140 Wahconah Street. See id.; Khounsavanh, 113 F.3d at 286. Nor does the affidavit's failure to mention the officers giving CI a prerecorded amount of currency for buys six and seven render those

---

[5] The affidavit specifies that the officers observed CI traveling to the prearranged locations of the buys, observed CI meeting with Sylvestre (for buys two and five) and a female (for buy one) and then that CI returned to the officers and gave them crack cocaine. For the buys that took place at 140 Wahconah Street, the affidavit states that officers observed CI traveling to 140 Wahconah Street and observed CI entering the building; and that CI then exited the building, returned to the officers, and gave them crack cocaine.

- 12 -

buys unreliable; the affidavit stated that officers searched CI prior to the transaction and found no money or contraband, and later CI brought them crack cocaine and had no other money or contraband. It is reasonable to infer, based on a common-sense reading, that the officers once again provided money.

In sum, we agree with the district court that the search warrant was clearly supported by probable cause. And because the existence of probable cause is so clear, we need not consider what would happen were that not so.

**B.**

We consider next Sylvestre's challenge to the denial of his Rule 29 motion for a judgment of acquittal. The parties agree that our review is de novo. We ask whether, "viewing the evidence and reasonable inferences in the light most favorable to the prosecution, no rational jury could have convicted [Sylvestre]." United States v. Polanco, 634 F.3d 39, 45 (1st Cir. 2011).

Sylvestre argues that the district court erred in denying his motion because the government did not provide sufficient evidence to show that Sylvestre constructively possessed the gun found in a cabinet drawer at 140 Wahconah Street. "In a firearms case, the Government may satisfy its burden to show knowing possession by showing that the defendant had 'constructive possession' of the weapon." United States v. Davis, 909 F.3d 9, 18 (1st Cir. 2018) (quoting United States v. Wight, 968 F.2d 1393,

1398 (1st Cir. 1992)). "Constructive possession is present 'when a person knowingly has the power at a particular time to exercise dominion and control over' an object." United States v. Nuñez, 852 F.3d 141, 145 (1st Cir. 2017) (quoting United States v. Maldonado-García, 446 F.3d 227, 231 (1st Cir. 2006)). Both "actual knowledge" and "intent to control" "may be proven by circumstantial evidence." Davis, 909 F.3d at 18. "[E]vidence of an individual's control over the area where the contraband is found" is "valid circumstantial evidence of constructive possession." Id. at 19 (alteration in original) (quoting United States v. Fernandez-Jorge, 894 F.3d 36, 44 (1st Cir. 2018)).

Sylvestre points out that the government did no analysis or testing for DNA or fingerprints on the gun, and that he did not admit to possessing or using the gun. He also contends that the government cannot show that he was running toward the cabinet where the gun was found when he was apprehended. Thus, he argues, the government's evidence was insufficient to show that he constructively possessed the gun.

Sylvestre's challenges miss the mark. To get to a jury on the question of constructive possession, the government needed only to introduce evidence that Sylvestre knowingly exercised dominion or control over the area where the gun was found. Id. There was good evidence that 140 Wahconah Street was Sylvestre's home -- including (1) the cable bill bearing his name and that

- 14 -

address, (2) his statement to police that he lived there, and (3) the fact that officers had previously observed him going in and out of that address. "The location of drugs or firearms in a defendant's home or car is a common basis for attributing possession to the defendant." United States v. Zavala Maldonado, 23 F.3d 4, 7 (1st Cir. 1994); see also Nuñez, 852 F.3d at 145 (evidence was sufficient to show constructive possession of Molotov cocktails because the court "had ample reason to believe that the appellant had dominion and control over his own home"); Davis, 909 F.3d at 19 (evidence was sufficient to establish constructive possession of a gun found in car that defendant had regular access to).

Moreover, the circumstantial evidence, viewed in the light most favorable to the government, tied Sylvestre not just to 140 Wahconah Street but specifically to the drawer where the gun was found. The government introduced evidence that the drawer contained prescription pill bottles with Sylvestre's name on them. Sylvestre contends that there was no evidence as to when those prescriptions were filled, but such a gap does not negate the reasonable inference of dominion and control, nor the reasonable inference that Sylvestre knew the gun was there. The jury could also have inferred that Sylvestre was moving toward the cabinet when he was apprehended because he knew it contained the gun. Sylvestre's argument that the government could not definitively

- 15 -

draw this conclusion falls flat, because "our standard of review means we will not speculate at possible innocent interpretations," and "[w]e need consider only the inferences that are both reasonable and most favorable to the verdict." United States v. Norris, 21 F.4th 188, 196 (1st Cir. 2021). Here, reasonable inferences viewed in that light support a finding that Sylvestre knowingly exercised dominion and control over the area where the gun was found.

Sylvestre also points out that three other individuals were found at 140 Wahconah Street when the warrant was executed, and that the cabinet was equally accessible to all of them. But Sylvestre was the only member of the household directly connected by evidence to the drawer in which the gun was found. Prescription pill bottles with his name on them were found in the same drawer. The drawer did not contain evidence identifying any other member of the household, and the only other document containing the name of another person present when the warrant was executed was not found in the cabinet. From this identifying evidence, a rational jury could reasonably infer that Sylvestre had dominion and control over the drawer containing the firearm. Further, constructive possession can be joint, so the fact that other individuals could have accessed the cabinet does not necessarily mean that there was insufficient evidence that Sylvestre constructively possessed the gun. See id. at 195-96 (rejecting challenge to sufficiency of

evidence on possession conviction where men's clothing and mail addressed to defendant were found in closet with drugs and gun, despite argument that another person accessed that room as well); Zavala Maldonado, 23 F.3d at 7 (noting that the location of a firearm in defendant's home is "a common basis for attributing possession," "even if the residence or room is shared by others").

We therefore conclude that the district court was correct in holding that the evidence was sufficient to support the convictions on the firearm charges.

## C.

Finally, Sylvestre lodges a substantive challenge to his 72-month sentence on count 1 for possessing a firearm as a felon. We review his preserved substantive challenge for abuse of discretion. See United States v. Bruzón-Velázquez, 49 F.4th 23, 32 (1st Cir. 2022).

"[T]he hallmarks of a substantively reasonable sentence are a plausible sentencing rationale and a defensible result." United States v. Merced-García, 24 F.4th 76, 82 (1st Cir. 2022) (alteration in original) (quoting United States v. Rodríguez-Cruz, 997 F.3d 362, 366 (1st Cir. 2021)). "This remains true even where, as here, the sentence is an upwardly variant one." Id. "[A]n adequate explanation for an upward variance and a plausible rationale for that variance are almost always two sides of the

same coin." Id. at 82 n.3 (quoting United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021)).

Here, the record makes clear that the district court adequately explained why it varied upward -- it found that the Guidelines sentencing range did not sufficiently account for the seriousness of Sylvestre's criminal history, namely his notable recidivism and repeated firearms offenses. And its result was clearly defensible for the same reasons.

Sylvestre argues otherwise, contending that the district court failed to appropriately consider the 18 U.S.C. § 3553(a) factors other than punishment and deterrence.[6] In particular, he asserts that the district court failed to accord enough weight to factors that tipped in Sylvestre's favor, such as his difficult upbringing, poor health, mental health history, and ailing grandmother. The district court clearly did consider those factors, stating that Sylvestre's young adult life was "terrible," and that he felt "sympathetic for the situation with [Sylvestre's] elderly mother." But although Sylvestre may disagree with the weight the judge assigned those factors, that does not render the

_____

[6] Although Sylvestre argues that the court improperly placed too much weight on deterrence because "[r]esearch . . . shows no relationship between sentence length and deterrence," Congress has established "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" as one of several factors a sentencing court shall consider in determining a particular sentence. 18 U.S.C. § 3553(a)(2)(B).

sentence improper.  See id. at 81 ("The mere fact of the defendant's disagreement with the district court's balancing of the various aggravating and mitigating factors does not constitute a valid ground for appeal."); United States v. Villanueva Lorenzo, 802 F.3d 182, 186 (1st Cir. 2015) ("If the court 'weighed those factors less heavily than [appellant] would have liked,' that judgment was within its discretion."  (alteration in original) (quoting United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015))).

Sylvestre also suggests that the district court's sentence was substantively unreasonable because it was not based on his individual characteristics, but rather based only on general deterrence concerns.  But, of course, section 3553(a) mandates that a sentencing judge consider "the need . . . to afford adequate deterrence."  18 U.S.C. § 3553(a)(2)(B).  In any event, while the district court did express concerns about deterrence, as noted above, it explicitly tied those concerns to Sylvestre's criminal history and the failure of previous sentences to deter his recidivism, including for the same offense.  The sentence thus was "rooted [both] in the nature and circumstances of the offense [and] the characteristics of the offender."  United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014) (quoting United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008)).

Finally, Sylvestre argues that the court should have justified further why the mitigating factors he presented did not "change the sentencing calculus." But the district court explained exactly why: It said that even accounting for those factors, it still needed to consider the danger to the community and the repeated nature of Sylvestre's conduct. No more was needed.

We thus conclude that the district court's 72-month sentence on Count I was substantively reasonable.

**III.**

For the foregoing reasons, the district court's orders are <u>affirmed</u>.